*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY A. GRIFFIN, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF NEW JERSEY DEPARTMENT OF HUMAN SERVICES, *et al*. <br><br> Defendants. | Civil Action No.: 18-14697 (FLW) (LHG) <br><br><br> OPINION |

**WOLFSON, United States Chief District Judge:**

Presently before the Court is the motion filed by Defendants the State of New Jersey Department of Human Services ("NJDHS"), Lisa Markowitz, Virginia Carlson, Christina Mongon, Jean DeVitto, and Lauri Woodward ("Individual Defendants") (collectively, "Defendants"), to dismiss *pro se* Plaintiff Mary A. Griffin's ("Plaintiff" or "Griffin") Complaint ("Compl."), which alleges, *inter alia*, that Defendants discriminated and retaliated against her on the basis of her race, pursuant to state and federal statutes. Defendants assert that Plaintiff's claims are barred by the applicable statutes of limitations and that Plaintiff failed to exhaust required administrative remedies.

For the following reasons, Defendants' motion is **GRANTED** and Plaintiff's Complaint is dismissed, with prejudice.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, a 60 year-old African American female, was hired by NJDHS on or about October

1

22, 2001, as a "Technical Assistant III," ("TA3"), a job title that allegedly provided no career advancement opportunity. Compl., ¶ 14. Plaintiff alleges that NJDHS employed two individuals who performed the work of a TA3, but that the other position was held by a white employee who was given the job title of "Senior Clerk Typist," which provided greater career advancement opportunities. In November of 2002, Plaintiff's job title was upgraded to "Principle Clerk Typist" pending her passage of a qualifying typing exam; however, in 2003, Plaintiff was demoted, and she again assumed the title of TA3. *Id*. at ¶¶ 18-20. Although Griffin passed a typing exam in January of 2008, she was not restored to the "Principle Clerk Typist" job title. Pl.Add., ¶ a.[1] Plaintiff was allegedly told that she would need to successfully complete a "desk audit" before she could regain that title. Plaintiff then requested a desk audit, yet never received one, which, according to Plaintiff, was done to block her career advancement. Compl., ¶ 22. Having been demoted, Plaintiff alleges that she was forced to "work out-of-title" for fifteen years "doing the same job as other employees in her office." *Id*. at ¶ 31. Plaintiff appears to argue that she was forced to fulfill the responsibilities of other elevated positions without receiving credit and adequate compensation for her performance of "out-of-title" work. This allegedly prevented Plaintiff from applying such "out-of-title" work experience towards future career advancement and promotion opportunities. Pl.Add., ¶ f. On or about August 8, 2012, Plaintiff filed the first of several discrimination complaints with the Equal Employment Opportunity Commission ("EEOC"), file no. 4990-2012, against her supervisors. *Id*. at ¶ h. Within thirty days of filing the first complaint, Plaintiff alleges that Defendants retaliated against her by suspending her for five

---

[1] In response to Defendants' motion to dismiss, Plaintiff submitted an opposition brief ("Pl.Add."), which asserts additional factual allegations pertaining to her "hostile work environment" claim. Since Plaintiff is *pro se*, for the purposes of this motion, the Court will consider those additional allegations asserted in Plaintiff's Brief that were not originally alleged in the Complaint. *See Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011).

days without pay. Compl., ¶ 26. Additionally, as further evidence of discrimination, Plaintiff alleges that she was not permitted to retain a refrigerator and filing cabinet in her shared office, but that her white co-workers were permitted to retain such items. *Id.* at ¶ 34.

In her Complaint, Plaintiff alleges the following: (1) violations of New Jersey Law Against Discrimination ("NJLAD"); (2) breach of Title VII of the Civil Rights Act of 1964; (3) violations of Age Discrimination Employment Act ("ADEA"); and (4) violations of the Fair Labor Standards Act ("FLSA"). Compl., ¶ i. These alleged violations resulted in economic loss, loss of employment benefits, mental pain and anguish, and a hostile work environment. For example, Plaintiff alleges that (1) Defendants concocted false accusations to support retaliatory disciplinary action taken against her; (2) she was "stonewalled, mislead or outright ignored" in her attempt to advance her career and improve her earning capability by forcing her to "work out-of-title" for fifteen years; (3) Defendants engaged in discriminatory acts by "allowing privilege to white co-workers that [were] denied to Plaintiff," (only permitting white co-workers to retain certain items in their shared office space); and (4) Defendants engaged in discriminatory and retaliatory work related decisions regarding Plaintiff's employment that resulted in a hostile work environment. Plaintiff argues that her continuous "out-of-title" work was discriminatory and that in its totality, it constituted a hostile work environment that necessitates the Court to apply the continuing violation doctrine to place this controversy within the statute of limitations. Pl.Add., ¶ j.

## II. LEGAL STANDARD

Defendants move to dismiss all of Plaintiff's claims based upon the fact that they are time-barred. In a motion to dismiss under Rule 12(b)(6), the Court may dismiss plaintiff's complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When

considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n. 3 (1984) (quotation and citation omitted). A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 583 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions.") (internal citations omitted); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009)("*Iqbal* ... provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*.").

A court may dismiss a claim under 12(b)(6) when there is a time-bar, so long as "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)(citing *Hanna v. United States Veterans' Administration Hospital*, 514 F.2d 1092, 1094 (3d Cir. 1975)). The time-bar must be apparent on the face of the complaint, or it may not be dismissed under Rule 12(b)(6). *Id*.

4

Here, Plaintiff is proceeding *pro se*; "[t]he obligation to liberally construe a pro se litigant's pleadings is well-established." *Higgs*, 655 F.3d at 339 (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)). "Courts are to construe complaints so 'as to do substantial justice,' Fed. R. Civ. P. 8(f), keeping in mind that pro se complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). "[T]here are limits to [the courts'] ... flexibility.... [P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282 (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

### III. DISCUSSION

#### A. STATUTE OF LIMITATIONS – NJLAD CLAIMS

Defendants argue that Plaintiff's Complaint does not allege any discriminatory or retaliatory acts pursuant to the NJLAD within the two-year statute of limitations, and therefore, Plaintiff's claims are time-barred. The statute of limitations for discrimination or retaliation under the NJLAD is two years from the date of the "adverse employment action" that forms the basis of one's lawsuit. *See Montells v. Haynes*, 133 N.J. 282, 286 (1993); *see* N.J.S.A. 10:5-1. Under the NJLAD, an "adverse employment action" is one "sufficiently severe or pervasive to have altered plaintiff's conditions of employment in an important and material manner." *Ivan v. Cty. of*

*Middlesex*, 595 F. Supp. 2d 425, 470 (D.N.J. 2009) This includes "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire." *AMTRAK v. Morgan*, 536 U.S. 101, 114 (2002). Here, Plaintiff filed her Complaint on January 22, 2019, yet the latest concrete act of discrimination she alleges occurred in 2014, well outside the statute of limitations period. However, Plaintiff seems to argue in her opposition that under the "continuing violation doctrine," her claims are not time-barred because Defendants created a hostile work environment by allowing Plaintiff to "work out-of-title" within two years of filing the Complaint.

In determining whether to invoke the continuing violation doctrine, courts consider whether the acts of discrimination and retaliation alleged by the plaintiff are "discrete (and therefore independently actionable) or non-discrete (and consequently actionable as part of a series of events)." *Southward v. Elizabeth Bd. of Educ.*, 2017 U.S. Dist. LEXIS 4209, at *19 (D.N.J. Jan. 11, 2017); *see also Morgan*, 536 U.S. at 113 (2002). New Jersey recognizes the continuing violation doctrine, which provides that when an employee experiences a "continual, cumulative pattern of tortious conduct" the limitations period begins only when the wrongful action ceases. *Wilson v. Wal-Mart Stores*, 158 N.J. 263, 272 (1999); *see Roa v. Roa*, 200 N.J. 555(2010) (holding that a supervisor's crude and indecent remarks and insistence that the plaintiff wear a brassiere could constitute an ongoing violation). The doctrine is based upon the premise that the conduct becomes tortious and actionable precisely because "of its continuous, cumulative, synergistic nature." *Wilson*, 158 N.J. at 273 (quotations omitted). The doctrine does not apply unless a plaintiff proves that "the defendant's conduct is more than the occurrence of isolated or sporadic acts." *Brannick v. New Jersey*, No. 06-356, 2006 U.S. Dist. LEXIS 78722, at *5 (D.N.J. Oct. 30, 2006) (internal quotations and citations omitted). When the continuing violation doctrine is invoked, it enables an employee to sue for the entirety of the discriminatory conduct

suffered, not just for the last instance of discrimination. The United States Supreme Court and the New Jersey Supreme Court have explained the extent of the continuing violation doctrine by holding that it "does not apply to revive untimely discrete acts of discrimination such as 'termination, failure to promote, denial of transfer, or refusal to hire.'" *Smith v. Amerada Hess Corp.*, 2005 U.S. Dist. LEXIS 25822, at *16 n.11 (D.N.J. Oct. 31, 2005) (citing *Morgan*, 536 U.S. at 114); *see Shepherd v. Hunterdon Dev. Ctr.*, 174 N.J. 1, 19-21 (2002). Demotions, reductions in pay, failures to promote, office moves to undesirable locations, undesirable assignments, transfers to dead-end jobs, transfers with reduction in pay, and compensation decisions are all discrete acts, and are not subject to the continuing violation doctrine. *See Morgan*, 536 U.S. at 114; *Shepherd*, 174 N.J. at 19-21; *Bolinger v. Bell Atl.*, 330 N.J. Super. 300, 308 (App. Div. 2000) ("[P]laintiff's placement on half-pay disability status was a discrete event in the same manner as a termination or denial of a promotion").

There is "a natural affinity" between the theory underlying hostile environment claims and the continuing violation theory. *Rush v. Scott Specialty Gases*, 113 F.3d 476, 482 (3d Cir. 1997) (holding that a pattern of derogatory remarks, rude behavior, and other acts of sexual harassment constituted a continuing violation)*; see also West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1997) (holding that the exception to the timely filing requirement of a discrimination claim is the continuing violation theory, making it appropriate to measure the running time of the required time period from the last occurrence of the discrimination and not from the first occurrence, and that in congruence with that theory, a hostile work environment claim may rely upon evidence of events occurring long before the relevant filing periods to establish such a claim). The New Jersey Supreme Court differentiated individual discriminatory acts, for which

the employee must allege a separate charge for each act, and a hostile work environment claim. *Shepherd*, 174 N.J. at 20. A hostile work environment claim is defined as:

> [A] series of separate acts that collectively constitute one "unlawful employment practice." … It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.
>
> That act need not, however, be the last act. As long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has "occurred," even if it is still occurring. Subsequent events, however, may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole.

*Id*. at 20 (quoting *Morgan*, 536 U.S. at 114-118 (citations and footnotes omitted).

Here, Griffin's allegations do not establish a pattern for purposes of invoking the continuing violation doctrine, nor do they indicate evidence of a hostile work environment, because they are all rooted in separate and discrete acts that occurred well outside the statute of limitations period.[2] Indeed, Plaintiff alleges a series of discrete discriminatory employment decisions such

---

[2] Nevertheless, the Court notes that even if the continuation doctrine applied to Plaintiff's hostile work environment claim, in considering all of Plaintiff's allegations, they fail to establish a cause of action under the NJLAD based on a hostile work environment framework. In order to establish a cause of action for hostile work environment under NJLAD, a plaintiff must show that the workplace is permeated with "discriminatory intimidation, ridicule[,] and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Plaintiff alleges that, here, certain defendants "made bias comments about Plaintiff's Christian religion," "would routinely yell at and demean Plaintiff publicly," and that one defendant "circulated an email stating 'talking to Plaintiff is like talking to a dog chasing its tail.'" Compl., ¶ 29. However, aside from her conclusory reference to "bias comments about Plaintiff's Christian religion," which is far too vague to establish a hostile work environment, Plaintiff does not allege that any of these comments are related to Plaintiff's status as a member of a protected class, *i.e.* based upon her race. *See Rossi v. Vericare Mgmt., Inc.*, No. 13-6884, 2016 U.S. Dist. LEXIS 161750, at *22 (D.N.J. Nov. 22, 2016) (denying hostile work environment claim because "the vast majority of Plaintiff's complained of conduct has no relation to his alleged protected

as failure to promote, and decisions regarding Plaintiff's compensation, that occurred between 2002 and 2014. Thus, they are not part of "an ongoing practice or policy of discrimination," that would warrant invoking the application of the continuing violation doctrine. *See Harel v. Rutgers*, 5 F. Supp. 2d 246, 262 (D.N.J. 1998) (holding that "distinct decisions against promotion" are "discrete acts instead of an ongoing practice or policy of discrimination"). *See also Morgan,* 536 U.S. at 113-115 ("Each discrete discriminatory act starts a new clock for filing charges alleging that act. Discrete acts such as ... failure to promote ... are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"); *see also Rush*, 113 F.3d at 483–484 (holding that plaintiff's failure to promote claim and train claims are "discrete instances of alleged discrimination that are not susceptible to a continuing violation analysis."). Likewise, retaliatory discipline actions are considered discrete employment actions. *See O'Connor v. City of Newark,* 440 F.3d 125, 127 (3d Cir.2006) (following *Morgan* and discussing types of discrete acts that are not susceptible to the continuing violations doctrine, including "wrongful discipline" and "failure to promote"); *see also Gadson v. City of Wilmington Fire Dep't,* 478 F. Supp. 2d 635 (D. Del. 2007) (holding that plaintiff's claims of "disparate treatment in defendant's imposition of discipline, as well as 'hiring and promotional policies and practices' which have a disparate impact" are discrete acts that "cannot be aggregated under a continuing violations theory").

---

status…"). Thus, Plaintiff's allegations are insufficient to support a hostile work environment claim, even if the claim was not time-barred.

Moreover, Plaintiff's claims cannot be saved by arguing that she worked "out of title" within the statute of limitations period. In *Sarno v. Wal-Mart Stores*, for instance, the plaintiff alleged that although she had received two disciplines and was passed over for a promotion outside the limitations period, the continuing violation doctrine applied because these discrete acts made it impossible for her to apply for a promotion during the limitations period. No. 12-002075, 2012 U.S. Dist. LEXIS 165328, at *3 (D.N.J. Nov. 20, 2012). The court rejected this argument, however, because the plaintiff's claims emanated from the failure to promote, which is "quintessentially a discrete employment action." *Id.* As in *Sarno*, Plaintiff here seems to argue that her performance of "out-of-title" work prevented Plaintiff from applying this work experience towards future career advancement and promotion opportunities. But, unlike *Sarno*, this "out-of-title" work was the result of alleged discrete actions that occurred outside the limitations period, such as Defendant's alleged discriminatory failure to promote and provide career advancement opportunities to Plaintiff. Plaintiff may not use mere on-going employment to bootstrap time-barred discriminatory acts within the limitations period. Thus, Plaintiff has not alleged a continuing violation that would bring her claims within the NJLAD statute of limitations period.

### B. STATUTE OF LIMITATIONS - TITLE VII & ADEA CLAIMS

Defendants also argue that Plaintiff's Title VII and ADEA claims are time-barred. Plaintiffs bringing claims under Title VII and the ADEA must first exhaust their administrative remedies by initially filing a complaint with the EEOC within the statutory time period. 42 U.S.C. 2000e-

5(f)(1).³ Under Title VII, where the EEOC has decided to dismiss a plaintiff's charge of discrimination, it will issue to the plaintiff a "right-to-sue-letter," the receipt of which gives the plaintiff ninety days to file suit against the party named in her charge of discrimination. 42 U.S.C. 2000e-5(f)(1). Title VII's requirement that a suit be filed within ninety days of receipt of the EEOC's right-to-sue letter acts as a statute of limitations on such claims, *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999), and the failure to timely comply with this requirement is cause for dismissal.⁴ *See, e.g., Rockmore v. Harrisburg Prop. Serv.*, 501 F. App'x 161, 164 (3d Cir. 2012) (affirming dismissal of Title VII plaintiff's complaint as untimely because it was filed more than 90 days after receipt of EEOC right-to-sue letter). Although the ADEA does not require that the EEOC issue a right-to-sue letter before a complainant can commence a federal suit, "[i]n the event that the EEOC issues a right-to-sue letter, an ADEA claimant must file its federal suit within ninety days after receipt of the letter." *Covington v. URS Corp.*, No. 11-04516, 2013 U.S. Dist. LEXIS 70755, at *7 (D.N.J. May 20, 2013) (citing 29 U.S.C. § 626(e); *Ruehl v. Viacom Inc.*, 500 F.3d 375, 383 n. 11 (3d Cir. 2007)).⁵

---

³ In their motion to dismiss, Defendants argue that Plaintiff failed to exhaust her administrative remedies because the Complaint contained no explicit allegations that Plaintiff ever filed a complaint with the EEOC. However, in her opposition brief, Plaintiff clarifies that the "discrimination complaints" referenced in the Complaint, were, in fact, EEOC complaints. Pl.Add. at ¶ h. Because Plaintiff is proceeding *pro se*, the Court accepts this clarification and, consequently, finds that Plaintiff exhausted her administrative remedies.

⁴ To be clear, there is no independent statute of limitations for Title VII claims other than the requirement that they be filed within 90-days of receiving a right-to-sue letter.

⁵ Until 1991, former section 626(e)(1) of the ADEA incorporated the two-year statute of limitations for non-willful violations and three-year statute of limitations for willful violations set forth in section 6 of the Portal–to–Portal Act. *Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 464 (3d Cir. 1994). Under the current version of section 626(e), section 6 of the Portal–to–Portal Act is no longer expressly incorporated and "the statute of limitations for an age discrimination action is ninety (90) days after plaintiff receives a notice that a charge filed with the EEOC was

Here, although Griffin filed a charge of discrimination with the EEOC against Defendants, she failed to file suit within 90 days of receipt of the right-to-sue letter. Plaintiff's EEOC right-to-sue letter was issued on October 23, 2012. Her 90 days, therefore, began on October 23, 2012 and ran on January 21, 2013. As Griffin did not file her Complaint until January 22, 2019, her claims under Title VII and the ADEA are clearly time-barred. Moreover, Plaintiff cannot raise a continuing violation argument with respect to her Title VII and ADEA claims, as this theory "is not applicable in a situation where a plaintiff… has timely filed a charge with the EEOC but has failed to timely file a Complaint in court after receipt of a right to sue letter." *Graham v. State Farm Mut. Auto. Ins. Co.*, No. 92-2864, 1992 U.S. Dist. LEXIS 13624, at *4 (E.D. Pa. Sept. 9, 1992) (citing *Brown v. Hartshorne Public School Dist. No. 1*, 926 F.2d 959, 962 (10th Cir. 1991); *Martin v. Frank*, 788 F.Supp. 821, 825 (D. Del. 1992)); *see also Adams v. Hult*, No. 14-6820, 2016 WL 5745111, at *4 (D.N.J. Sept. 30, 2016) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)) (dismissing continuing violations argument when plaintiff failed to file complaint within 90-days of receiving right-to-sue letter). Plaintiff's Title VII and ADEA claims are, therefore, dismissed.

### C. STATUTE OF LIMIATIONS - FLSA CLAIM

Finally, Defendants move to dismiss Plaintiff's FLSA claim, also on statute of limitations grounds. The Portal-to-Portal Act of 1947, 29 U.S.C.S. § 254(a), imposes a two-year statute of limitations for non-willful violations of the Fair Labor Standards Act of 1938, 29 U.S.C.S. § 201, *et seq.*, and a three-year statute of limitations for willful violations. 29 U.S.C.S. § 255(a). "A

---

dismissed or that the EEOC otherwise terminated such a charge." *Connolly v. Mitsui O.S.K. Lines (Am.), Inc*., No. 04-5127, 2006 WL 2466848, at *6 (D.N.J. Aug. 24, 2006) (quoting 29 U.S.C. § 626(e)).

12

cause of action under FLSA 'accrues' whenever the employer fails to pay the required compensation for any particular workweek," and an "action is commenced on the date a complaint is filed." *Pignataro v. Port Auth. of New York & New Jersey*, No. 04-1767, 2008 U.S. Dist. LEXIS 49082 at *4 (D.N.J. June 27, 2008) (quoting *Wolfslayer v. Ikon Office Solutions, Inc.,* No. 03–6709, 2004 U.S. Dist. LEXIS 22625, at *34 (E.D.Pa. Nov. 8, 2004)). Accordingly, no claim for unpaid minimum wages, unpaid overtime compensation, or other damages under the FLSA shall be valid with respect to any such claim that has arisen more than two years (or three-years for willful violations) prior to the commencement of an action. In the present matter, Plaintiff has not alleged a specific wage dispute claim that accrued within the two-year statute of limitations period, as the only wage-reflected conduct Plaintiff identifies occurred in October of 2003, when she returned to the TA3 position and her salary was reduced. Compl., ¶ 20. Plaintiff's FLSA claim is, therefore, also time-barred.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's claims were untimely and Defendants' motion to dismiss pursuant to is **GRANTED**, and Plaintiff's claims are, therefore **DISMISSED**.


Dated: July 26, 2019                                              /s/ Freda L. Wolfson
                                                                               Hon. Freda L. Wolfson
                                                                               United States Chief District Judge